UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JACK BUCKHORN, et al.,

        Plaintiffs,

   v.

MARLON EUGENE HETTINGER,
Individually and doing business as
HETTINGER ELECTRIC,

        Defendant.

Case No. 15-cv-04352-TSH

**ORDER RE: MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. No. 104

## I.  INTRODUCTION

Plaintiffs Jack Buckhorn and Anisa M. Thomsen, who are trustees and fiduciaries of the Plaintiff Trust Funds described below, allege Defendant Marlon Eugene Hettinger, individually and doing business as Hettinger Electric, refused to pay contributions owed to the Trust Funds under the parties' Collective Bargaining Agreement.  Their original complaint was brought solely under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 502, 515. However, they subsequently amended their complaint to seek damages assigned to them by Fregoso Builders, Hettinger's subcontractor.  Pending before the Court is Plaintiffs' Motion for Summary Judgment.  ECF No. 104.  Hettinger filed an Opposition (ECF No. 123) and Plaintiffs filed a Reply (ECF No. 136).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Plaintiffs' motion for the following reasons.

## II.    BACKGROUND

### A.    Parties

Jack Buckhorn and Anisa Thomsen are trustees and fiduciaries of the Redwood Empire Electrical Workers Health and Welfare Trust Fund and Redwood Empire Electrical Workers Pension Trust Fund, Joint Electrical Industry Training Program, National Employees Benefit Fund, and Redwood Empire Electrical Workers Work Recovery Fund and Redwood Empire Vacation Fund (the "Plaintiff Trust Funds"). Sec. Am. Compl. ("SAC") ¶ 2, ECF No. 54-1. The trust funds are employee benefit plans as defined in 29 U.S.C. § 1002 and multiemployer plans as defined in 29 U.S.C. §§ 1002(37) and 1301(a)(3). Stafford Decl. ¶¶ 2-3, ECF No. 112. They provide health, retirement, and other fringe benefits for employees on whose behalf contributions are required to be made by employers pursuant to collective bargaining agreements. Marshall Suppl. Decl. ¶ 2, ECF No. 116. The Plaintiff Trust Funds, along with Plaintiffs Buckhorn and Thomsen, are referred to herein as Plaintiffs.

Defendant Hettinger, individually and doing business as Hettinger Electric, is an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), section 2(2) of the National Labor Relations Act, 29 U.S.C. § 152(2). Stafford Decl. ¶ 2. Hettinger and Hettinger Electric are referred to herein as Hettinger.

Fregoso Builders, Inc. is a contractor who entered into a written contract for Hettinger to work as an electrical subcontractor of Fregoso. Fregoso Decl. ¶ 6, ECF No. 110.

### B.    Relevant Agreements

On February 3, 2011, Hettinger signed a document known as the Letter of Assent. A. Thomsen Decl. ¶ 2, ECF No. 105; McEntagart Decl. ¶ 2, ECF No. 108; *id.*, Ex. A (Letter of Assent), ECF No. 108-2. Through the Letter of Assent, Hettinger authorized the Redwood Empire Chapter of the National Electrical Contractors Association ("NECA") to be its collective bargaining representative. *See* Letter of Assent; Thomsen Decl. ¶ 2; McEntagart Decl. ¶ 2. The Letter of Assent binds Hettinger to all the provisions of the ongoing Inside Labor Agreements between I.B.E.W. Local 551 and the Redwood Empire Chapter of NECA, effective as of February 3, 2011. *See* Letter of Assent, Thomsen Decl. ¶ 3; McEntagart Decl. ¶ 3. The Letter of Assent

provides it shall remain in effect until Hettinger terminates it by giving written notice to the Redwood Empire Chapter of NECA and the Local Union (Local 551) at least 150 days prior to the then-current anniversary date of the applicable labor agreement. *See* Letter of Assent, Thomsen Decl. ¶ 3; McEntagart Decl. ¶ 3.

By virtue of the Letter of Assent, Hettinger was bound to the terms of a collective bargaining agreement known as the Inside Agreement between Local Union 551 International Brotherhood of Electrical Workers and Redwood Empire Chapter NECA (the "Bargaining Agreement"). Thomsen Decl. ¶ 4; McEntagart Decl. ¶ 4; *id.*, Ex. B (Bargaining Agreement). The Bargaining Agreement was effective from June 1, 2015 through May 31, 2017. Bargaining Agreement, § 1.01. The Bargaining Agreement requires the payment of fringe benefit contributions to the Plaintiff Trust Funds. *Id.*, Arts. VI-X. It also requires fringe benefit contributions to the National Electrical Benefit Fund, Labor Management Fund, and the National Electrical Industry Fund (the "National Electrical Accounts"). *Id.*, §§ 6.01, 7.01, 8.01-04.

Pursuant to the Bargaining Agreement, fringe benefit contributions are due 15 calendar days following the month in which the hours were worked. *Id.*, Art. VI. It requires an employer to pay liquidated damages and interest on delinquent contributions. *Id.*, §§ 8.04, 9.04. It also requires that an employer who fails to make the required contributions to the Plaintiff Trust Funds also pay all costs of collection, including attorneys' fees. *Id.*, §§ 6.07, 8.04, 9.04.

Pursuant to the Redwood Empire Electrical Workers Pension Trust Agreement (the "Pension Agreement"), the Redwood Empire Electrical Workers Health and Welfare Trust Agreement (the "H&W Agreement"), and the National Electrical Benefit Funds ("NEBF") Restated Employees Benefits Agreement and Trust for the NEBF ("NEBF Agreement"), the trustees of the trust funds may require an employer to submit its records to an accountant selected by the Board of Trustees for audit and must pay all amounts found due pursuant to the audit. Thomsen Decl., Ex. C (NEBF Agreement), §§ 6.7-6.9; Ex. D (Pension Agreement), § 5.21(b); Ex. E (H&W Agreement), ¶ 45(b).

Pursuant to the NEBF, Pension, and H&W Agreements, the Board of Trustees may file a lawsuit against a delinquent employer and may recover the principal delinquent amount due,

3

attorneys' fees and costs, applicable audit costs, and 10% per annum interest on any delinquent contributions, as well as 20% liquidated damages.  NEBF Agreement, §§ 6.8-6.9; Pension Agreement, § 5.23; H&W Agreement, ¶ 47.

Pursuant to the agreements, the Board of Trustees is authorized to formulate and implement rules and regulations to facilitate the proper functioning of the Plaintiff Trust Funds. NEBF Agreement, §§ 5,11, 6.8; Pension Agreement, § 5.24; H&W Agreement, ¶ 48.  In accordance with this authority, the trust funds have adopted Collection Procedures detailing the procedures for collecting employer contributions.  McEntagart Decl. ¶ 14; Thomsen Decl. ¶ 13; *id.*, Ex. F (Collection Procedures).

## C.    Collection Procedures

Each month, employers bound to the Bargaining Agreement are sent contribution report forms to self-report the hours worked by their employees for the month.  Marshall Decl. ¶ 3, ECF No. 106.  The employer must fill out the form with all hours worked by its employees and return it to the trust funds' administrator's office with payment.  *Id.*  Pursuant to the Collection Procedures, all reports and payments from participating contractors are due and payable by the 15th of the month following the month in which the hours were worked.  *Id.*, Ex. A (Collection Procedures), § I(A).  All reports and payments not received by the close of business on the 20th of the month following the month in which the hours were worked are considered delinquent.  *Id.*

Payments for the Electrical Industry Accounts (consisting of Health & Welfare, Training, Pension, Work Assessment, and Vacation) are submitted to Alice Marshall, the Plaintiff Trust Funds' Administrator.  Marshall Decl. ¶¶ 1, 8, 10.  Payments for the National Electrical Accounts (consisting of the National Electrical Benefit Fund, Labor Management Fund, and the National Electrical Industry Fund) are submitted to the office of the Redwood Empire Chapter of NECA. *Id.* ¶¶ 8, 10; Thomsen Decl. ¶ 7.

Pursuant to the Collection Procedures, liquidated damages are assessed on contribution reports received after the close of business on the 20th of each month following the month worked.  Collection Procedures, § II(A)(1).  If it is necessary to file suit to collect delinquent amounts owed, then 20% liquidated damages will be charged on delinquent contributions, in

4

addition to attorneys' fees and costs. *Id.* § II(A)(1)(c). Also pursuant to the Collection Procedures, interest at 10% is charged on all payments received after the close of business on the 26th of the month following the month worked, calculated from the 21st of the month until paid in full. *Id.*, § II(A)(1).

**D.      Hettinger's Unpaid Contributions**

The Plaintiff Trust Funds' records indicate Hettinger submitted monthly contribution report forms for July and August 2015 without payment. Thomsen Decl. ¶ 15; Marshall Decl. ¶¶ 7-9; *id.*, Ex. B (contribution report forms submitted by Hettinger).

**1.      Amounts Owed to the Electrical Industry Accounts**

Pursuant to the contribution report form submitted by Hettinger for July 2015, $21,957.17 was due to the Electrical Industry Accounts, consisting of Health & Welfare, Training, Pension, Work Assessment, and Vacation. Marshall Decl. ¶ 8; *id.*, Ex. B at ECF p. 7. Pursuant to the form submitted for August 2015, $21,393.80 was due to the Electrical Industry Accounts. *Id.* at ECF p. 9. However, on April 6, 2016, the Plaintiff Trust Funds received payment in the amount of $39,350.97 from co-Plaintiff Fregoso Builders and received payment in the amount of $4,000.00 on a Contractors' License Bond claim. Marshall Decl. ¶¶ 11-12. These amounts were received after the trust funds served a stop notice on a project where Hettinger was working during July and August 2015 and filed a lawsuit on the stop notice, as well as a claim on Hettinger's Contractors' License Bond. *Id.* ¶ 12. The trust funds paid the principal contributions due to the Electrical Industry Accounts for July and August 2015 through these funds. *Id.* ¶ 13.

As Plaintiffs had to file a lawsuit to collect Hettinger's delinquent contributions, liquidated damages are assessed at 20% of the principal contributions reported. Collection Procedures, § II(A)(1). As such, $4,391.43 is due in liquidated damages on the reported July 2015 contributions (20% of $21,957.17) and $4,278.76 is due in liquidated damages on the reported August 2015 contributions (20% of $21,393.80). Marshall Decl. ¶¶ 14-15.

Pursuant to the Collections Procedures, interest on July 2015 contributions for the Electrical Industry Accounts is calculated from August 21, 2015 through April 6, 2016 (the date payment was received) as follows: $21,957.17 (reported contributions due) * .10 = $2,195.72.

$2,195.72 / 365 = \$6.02$ (daily rate). 8/21/15 through 4/6/16 = 230 days. \$6.02 (daily rate) * 230 days = \$1,384.60 due in interest. *Id.* ¶ 16; Collections Procedures, § II(A)(1). Interest on August 2015 contributions is calculated from September 21, 2015 through April 6, 2016 (the date payment was received) as follows: \$21,393.80 (reported contributions due) * .10 = \$2,139.38. \$2,139.38 / 365 = \$5.86 (daily rate). 9/21/15 through 4/6/16 = 199 days. \$5.86 (daily rate) * 199 days = \$1,166.14 due in interest. Marshall Decl. ¶ 17; Collections Procedures, § II(A)(1).

As a result, Hettinger is indebted to Plaintiffs for the Electrical Industry Accounts as follows:

| Work Month | Unpaid Contrib. | 20% Liquidated Damages | Interest Calc. Start Date | Interest Calc. End Date | 10% Interest | Subtotals |
|---|---|---|---|---|---|---|
| July 2015 | $0.00 | $4,391.43 | 8/21/2015 | 4/6/2016 | $1,384.60 | **$5,776.03** |
| August 2015 | $0.00 | $4,278.76 | 9/21/2015 | 4/6/2016 | $1,166.14 | **$5,444.90** |
| | **$0.00** | **$8,670.19** | | | **$2,550.74** | **$11,220.93** |

## 2. Amounts Owed to the National Electrical Accounts

Pursuant to Hettinger's July 2015 contribution report form, $1,684.83 was due to the National Electrical Accounts, consisting of the National Electrical Benefit Fund, Labor Management Fund, and the National Electrical Industry Fund. Marshall Decl. ¶ 8; Thomsen Decl. ¶ 15. Pursuant to the form submitted for August 2015, $1,696.37 was due to the National Electrical Accounts. Marshall Decl. ¶ 9; Thomsen Decl. ¶ 15. These amounts remain unpaid. Marshall Decl. ¶¶ 8-9; Thomsen Decl. ¶ 15.

As Plaintiffs had to file a lawsuit to collect Hettinger's delinquent contributions, liquidated damages are assessed at 20% of the principal contributions reported for the National Electrical Accounts. Collection Procedures, § II(A)(1). As such, $336.97 is due in liquidated damages on the reported July 2015 contributions (20% of $1,684.83) and $339.27 is due in liquidated damages on the reported August 2015 contributions (20% of $1,696.37). Thomsen Decl. ¶¶ 16-17.

Pursuant to the Collections Procedures, interest on July 2015 contributions for the Electrical Industry Accounts is calculated from August 21, 2015 through August 15, 2018 (the date through which Plaintiffs calculated interest in their motion) as follows: $1,684.83 * .10 = $168.48. $168.48/365 = $0.46 (daily rate). 8/21/15 through 8/15/18 equals 1,091 days. $0.46

(daily rate) * 1,091 days = $501.86. *Id.* ¶ 16; Collections Procedures, § II(A)(1). Interest on

August 2015 contributions is calculated from September 21, 2015 through August 15, 2018 (the

date through which Plaintiffs calculated interest in their motion) as follows: $1,696.37 * .10 =

$169.64. $169.64/365 = $0.46 (daily rate). 9/21/15 through 8/15/18 equals 1,060 days. $0.46

(daily rate) * 1,060 days = $487.60. Thomsen Decl. ¶ 17; Collections Procedures, § II(A)(1).

As a result, Hettinger is indebted to Plaintiffs for the National Electrical Accounts as

follows:

| Work Month | Unpaid Contrib. | 20% Liquidated Damages | Interest Calc. Start Date | Interest Calc. End Date | 10% Interest | Subtotals |
|---|---|---|---|---|---|---|
| July 2015 | $1,684.83 | $336.97 | 8/21/2015 | 8/15/2018 | $501.86 | **$2,523.66** |
| August 2015 | $1,696.37 | $339.27 | 9/21/2015 | 8/15/2018 | $487.60 | **$2,523.24** |
| | **$3,381.20** | **$676.24** | | | **$989.46** | **$5,046.90** |

### 3. Hettinger's Audit Inspection

Plaintiffs requested John Martin of Compliance Audit Services, Inc. perform an audit of

Hettinger's payroll records covering the time period January 1, 2015 through December 31, 2015

(the "Audit Period"). Marshall Decl. ¶ 18; Martin Decl. ¶ 3, ECF No. 107. Such an audit entails

an inspection of Hettinger's records to determine whether Hettinger complied with its fringe

benefit contribution obligations under the Bargaining Agreement, and a compilation of what the

inspection discloses in the form of a report. Martin Decl. ¶¶ 1, 4.

Hettinger provided the auditor with its Federal and State tax returns for the 2015 tax year

and certified payroll reports relative to a project known as Cabernet Village at Sonoma State

University. *Id.* ¶ 5. The auditor also obtained copies of Hettinger's monthly contribution reports

that were sent by Hettinger to the trust funds' administrator. *Id.* ¶ 6. The auditor determined that

certain contributions in the amount of $18,047.04 were unreported by Hettinger for work

performed during the Audit Period. *Id.* ¶ 7. The contributions disclosed were specifically due for

work performed during the months of July 2015 through August 2015. *Id.* The auditor noted the

amounts found due on the audit were the result of the difference between the hours worked as

represented on the certified payroll reports submitted by Hettinger and the hours reported by

Hettinger to the Plaintiff Trust Funds. *Id.* ¶ 8. To calculate the amount due on the audit, the

unreported hours were multiplied by the effective hourly trust fund contribution rates in the Bargaining Agreement to determine the total amount due in underpayments. *Id.* ¶ 10.

In early 2017, the audit report was revised relative to a dispute regarding two employees included in the initial audit report. *Id.* ¶ 11. Pursuant to the dispute, the amounts due for the two disputed employees were removed. *Id.* The auditor prepared a revised audit report, which shows contributions in the amount of $15,851.54 were unreported for work performed during the Audit Period. *Id.* ¶ 12; Ex. A (revised audit report), ECF No. 107-2. These amounts are due in addition to the amounts reported by Hettinger for July and August 2015, but no amounts due pursuant to the audit report have been paid. Marshall Decl. ¶ 19.

As Hettinger's delinquent contributions found due pursuant to the audit report are the subject of this lawsuit, liquidated damages are assessed at 20% of the principal due. Collection Procedures, § II(A)(1). Thus, $3.170.31 ($15,851.54 * 20%) in liquidated damages are due on the amount due pursuant to the audit report. Marshall Decl. ¶ 20. Of the $15,851.54, $241.62 is due for July 2015 and $15,609.82 is due for August 2015. *Id.* ¶ 21. Interest on the July 2015 contributions is calculated from August 21, 2015 through August 15, 2018 (the date through which Plaintiffs calculated interest in their motion) as follows: $241.62 * .10 = $24.16. $24.16 / 365 = 0.07 (daily rate). 8/21/15 through 8/15/18 = 1,091 days. $0.07 (daily rate) * 1,091 days = $76.37 due in interest. *Id.* ¶ 22; Collections Procedures, § II(A)(1). Interest on the August 2015 contributions is calculated from September 21, 2015 through August 15, 2018 as follows: $15,609.82 * .10 = $1,560.98. $1,560.98 / 365 = $4.28 (daily rate). 9/21/15 through 8/15/18 = 1,060 days. $4.28 (daily rate) * 1,060 days = $4,536.80 due in interest. Marshall Decl. ¶ 23; Collections Procedures, § II(A)(1).

The total claimed by Plaintiffs with respect to the audit report is as follows:

| | |
|---|---|
| Contributions Due | $15,851.54 |
| Interest (10% per annum) | $4,613.17 |
| Liquidated Damages (20%) | $3,170.31 |
| **Total** | **$23,635.02** |

**E.      Fregoso Builders**

As noted above, Fregoso Builders is a licensed contractor in the State of California.  In response to an advertisement soliciting bids, Fregoso elected to bid on a project known as the Cabernet Village Student Housing Project, located on the campus of California State University Sonoma (the "Sonoma State Project").  Fregoso Decl. ¶ 3.  Fregoso solicited bids from trade subcontractors, including the electrical scope of work.  *Id.* ¶ 4.

In June 2015, Hettinger entered into a written subcontract with Fregoso to work as an electrical subcontractor on the Sonoma State Project.  *Id.*, Ex. A (the Sonoma State Subcontract), ECF No. 110-2.  The subcontract provides Hettinger will be in default of its terms in the event he becomes delinquent with respect to contributions to any health and welfare, pension, vacation, apprenticeship or other employee benefit program or trust.  Sonoma State Subcontract, § 14.1.1. The subcontract also provides that if Hettinger is terminated, he shall be entitled to no further payment until the balance of the work has been completed.  *Id.*, § 14.1.2.  The subcontract further provides Fregoso is authorized to use whatever means in its discretion it may deem appropriate to cause any liens or suits on the Sonoma State Project to be removed and provides that Hettinger shall be responsible for all attorneys' fees and costs required to remove said lien.  *Id.*, § 9.  The Sonoma State Subcontract additionally provides that the full performance of Hettinger's obligation to remove any liens or suits on the Sonoma State Project, including the payment of any amounts due from Hettinger to Fregoso, is a condition precedent to Hettinger's right to receive payment for work performed.  *Id.*

On or about October 2015, Fregoso Builders was served with a lien on the Sonoma State Project in the form of a Public Works Stop Notice issued by Plaintiffs, stating that $49,831.46 was due for work performed on the project.  Fregoso Decl. ¶ 12; Minser Decl. ¶ 5, ECF No. 111; *id.*, Ex. A (Stop Notice), ECF No. 111-1.  The amounts due on the Stop Notice were for unpaid fringe benefit contributions due to the Plaintiff Trust Funds for work performed on the Sonoma State Project.  Minser Decl. ¶ 5.

On December 21, 2015, Plaintiffs filed suit on the Stop Notice in the Superior Court of California, County of Sonoma, Case No. SCV-258178, naming Fregoso Builders, Sonoma State

University, and the Board of Trustees of the California State University as defendants.  *Id.*, Ex. C (Sonoma County Superior Court Complaint).[1]  In response, Fregoso paid $39,350.97 to the trust funds pursuant to a Settlement Agreement and Release.  Fregoso Decl. ¶ 15; Campbell Decl. ¶ 9, ECF No. 109.  As part of the agreement, Plaintiffs dismissed the superior court case and released the stop notice.  Fregoso Decl. ¶ 15; Campbell Decl. ¶ 9.  Plaintiffs also received an express assignment from Fregoso to pursue recovery on its behalf against Hettinger, and the complaint in the present case was amended to add Fregoso as a co-plaintiff.  Campbell Decl. ¶ 9; First Am. Compl., ECF No. 22.

**F.**   **Attorneys' Fees and Costs**

As detailed below, Plaintiffs also seek attorneys' fees in the amount of $31,984.90 and costs in the amount of $1,440.82.  Mot. at 9-10.

**G.**   **Total Judgment Sought by Plaintiffs**

In total, Plaintiffs seek judgment in the amount of $112,679.54 as follows:

| Work Month | Unpaid Contrib. | 20% Liquidated Damages | 10% Interest | Subtotals |
|---|---|---|---|---|
| 6/15 (Electrical Industry Accounts) | $0.00 | $4,391.43 | $1,384.60 | $5,776.03 |
| 7/15 (National Electrical Accounts) | $1,684.83 | $336.97 | $501.86 | $2,523.66 |
| 8/15 (Electrical Industry Accounts) | $0.00 | $4,278.76 | $1,166.14 | $5,444.90 |
| 8/15 (National Electrical Accounts) | $1,696.37 | $339.27 | $487.60 | $2,523.24 |
| **Subtotal:** | **$3,381.20** | **$9,346.43** | **$3,540.20** | **$16,267.83** |
| Contributions due per Audit (7/15 through 8/15): | | | | $15,851.54 |
| Interest due per Audit (10% per annum) | | | | $4,613.17 |
| 20% Liquidated Damages due per Audit | | | | $3,170.31 |
| **Subtotal (Audit)** | | | | **$23,635.02** |
| Former Counsel's Attorneys' Fees (8/6/15 through 7/21/17) | | | | $17,534.40 |
| Former Counsel's Costs (8/6/15 through 7/21/17) | | | | $1,176.24 |
| Current Counsel's Attorneys' Fees (9/12/17 through 8/17/18) | | | | $14,450.50 |
| Current Counsel's Costs (9/12/17 through 8/17/18) | | | | $264.58 |
| **Subtotal (Attorneys' Fees and Costs)** | | | | **$33,425.72** |
| Amount Owed to Plaintiff Fregoso Builders | | | | $39,350.97 |
| | | | **GRAND TOTAL** | **$112,679.54** |

Mot. at 25.

---

[1] The Court takes judicial notice of the complaint as a matter of public record.  *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

**H.      Procedural Background**

Plaintiffs filed their initial Complaint on September 23, 2015, seeking damages against Hettinger related to unpaid contributions for the months of June 2015 through July 2015.[2]  ECF No. 1.  Fregoso Builders was not a named plaintiff.  The case was initially assigned to Magistrate Judge Elizabeth Laporte.  ECF No. 4.  As Hettinger initially failed to appear, the Clerk of Court entered default against it on December 17, 2015.  ECF No. 14.

On June 7, 2016, Plaintiffs filed a First Amended Complaint, adding Redwood Empire Vacation Fund and Fregoso Builders as plaintiffs.  ECF No. 22.  Plaintiffs again sought damages against Hettinger related to unpaid contributions for the months of June 2015 through July 2015.  *Id.* ¶ 7.  In addition, Plaintiffs alleged Fregoso Builders assigned its rights to collect the $39,350.97 it paid to the trust funds pursuant to the parties' settlement agreement.  *Id.* ¶ 9.

On March 28, 2017, Plaintiffs filed a Motion for Default Judgment.  ECF No. 39.  However, on April 18, 2017, Hettinger, appearing pro se, filed a Motion to Set Aside Default.  ECF No. 42.  After Hettinger filed a request for reassignment to a district judge, ECF No. 47, Magistrate Judge Laporte directed the Clerk to reassign the case with a recommendation that both motions be denied.  ECF No. 49.  As to the motion for default judgment, Judge Laporte recommended it be denied as moot because, although the Clerk entered default on their original complaint, Plaintiffs had not obtained the entry of default on the amended complaint.  *Id.* at 3-4 (citations omitted).  As the Court cannot set aside a moot entry of default, Judge Laporte recommended Hettinger's motion to set aside default also be denied as moot.  *Id.* at 4.  The case was subsequently reassigned to Judge Edward M. Chen, who adopted the report and recommendation and denied both motions as moot.  ECF No. 51.

On July 21, 2017, Plaintiffs moved to file a Second Amended Complaint, seeking to add new information and damages figures revealed as a result of the audit discussed above, and changing the relevant period to July through August 2015.  ECF No. 54.  Judge Chen granted Plaintiffs' motion on October 13, 2017.[3]

---

[2] As discussed below, Plaintiffs subsequently corrected the months to July and August 2015.

[3] Plaintiffs did not formally file the SAC as a separate docket entry; hence, the Court's citations to

On October 22, 2017, Judge Chen issued a Case Management Order setting a dispositive motion hearing date of October 4, 2018 and a court trial on January 14, 2019. ECF No. 65. The parties participated in court-sponsored mediation on January 12, 2018 but were unable to settle. ECF No. 77.

After Hettinger failed to appear at a status conference on January 25, 2018, Judge Chen ordered him to show cause why default should not be entered for failing to respond to the SAC and failing to appear at the status conference. ECF No. 80. Hettinger responded on February 16, 2018, stating that he filed a response before the mediation and "wasn't sure there was anything else that needed to be filed." ECF No. 81. Hettinger also filed an Answer and Counterclaim against Fregoso Builders for "Unpaid Benefits for the employees working on the Sonoma State housing project. These amounts are $15,851.44, $3,381.30 according to Damages Claim by defendant." ECF No. 82. Judge Chen discharged the order to show cause. ECF No. 83.

On March 5, 2018, Counter-Defendant Fregoso Builders filed a Motion to Dismiss under Rule 12(b)(6). ECF No. 84. Judge Chen granted Fregoso's motion on April 3, 2018 but permitted Hettinger to file an amended counterclaim within 30 days. ECF No. 88.

On May 31, 2018, Judge Chen held a further status conference, during which he directed Fregoso Builders to "submit a proposed order dismissing it from the complaint." ECF No. 100. Fregoso filed a proposed order that day, noting Hettinger failed to file an amended counterclaim and therefore dismissing his counterclaim with prejudice. ECF No. 98. Judge Chen granted dismissal on June 1, 2018. ECF No. 99.

Plaintiffs filed the present motion on August 23, 2018.

On September 19, 2018, Judge Chen issued an order for supplemental filing. ECF No. 114. Specifically, Judge Chen noted section 515 of ERISA requires a plaintiff seeking to enforce an employee benefit plan to establish that the plan is a "multiemployer plan" as defined by section 3(1) of ERISA, 29 USC § 1002(37)(A), yet Plaintiffs failed to allege in the complaint or shown in the materials filed in support of their motion that the benefit plans at issue are "multiemployer

---

the SAC refer to Exhibit 1 of their motion to amend. ECF No. 54-1.

plans." *Id.* Judge Chen ordered Plaintiffs to file any such materials by September 24, 2018. *Id.* Plaintiffs filed their supplemental briefing on September 24, 2018, indicating they are multi-employer plans as defined by the section 3(37)(A) of ERISA, 29 U.S.C. §1002(37)(A)), and provide health, retirement, and other fringe benefits for employees on whose behalf contributions are required to be made by employers pursuant to collective bargaining agreements. Marshall Suppl. Decl. ¶ 2.

Judge Chen held a hearing on Plaintiffs' motion on September 27, 2018. ECF No. 118. Hettinger attended with counsel, who agreed to represent Hettinger if the Court granted an extension to oppose Plaintiffs' motion. *Id.* Judge Chen granted the request and extended the deadline for Hettinger's opposition to November 19, 2018. *Id.* Defense counsel also moved for Judge Chen to revise his order dismissing Hettinger's counterclaim against Fregoso Builders. *Id.* Judge Chen vacated the prior order dismissing the counterclaim with prejudice and stated, "determination will now reflect dismissed without prejudice to file in state court." *Id.* Hettinger filed his opposition on November 19, 2018.

Although Judge Chen extended the dispositive motion briefing deadlines, all other pretrial and trial deadlines remained in effect. Thus, on December 3, 2018, the parties filed a Joint Pretrial Conference Statement in which both parties consented to proceed before a magistrate judge. ECF No. 127 at 13. On December 5, 2018, the case was reassigned to the undersigned. ECF No. 129.

On December 6, 2018, Plaintiffs filed their Reply.

### III.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322 (internal quotations omitted).

Finally, "[w]hile the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citations omitted).

## IV. DISCUSSION

### A. Evidentiary Objections

As a preliminary matter, Hettinger raises several objections to Plaintiffs' declarations submitted in support of their motion.

### 1. Fregoso Declaration

Hettinger objects to Max Fregoso's declaration claiming he fails to "affirmatively show a personal knowledge" of the matters addressed therein and that much of the testimony is irrelevant to Plaintiffs' motion because "the Complaint contains No Cause of Action for Money Allegedly Owed to Fregoso Builders for Breach of Contract." ECF No. 119-1. At the summary judgment phase, "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001). Rule 56 requires only that a declaration used to support a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court finds Fregoso's declaration satisfies these requirements, and Hettinger provides no reason why he would not have personal knowledge of the facts to which he is testifying. Further, Hettinger's objection that Plaintiffs failed to allege a breach of contract claim is without merit because, as discussed below, the Court finds Plaintiffs state a valid claim. Accordingly, Hettinger's objections are **OVERRULED**.

### 2. Campbell Declaration

Hettinger objects to two paragraphs in Sue Campbell's declaration. ECF No. 119-2. In paragraph 1, Campbell testifies: "I have personal knowledge of the matters stated herein and could competently testify to them if called upon to do so at trial." Hettinger objects on the grounds that Campbell lacks personal knowledge. Obj. to Campbell Decl., ECF No. 119-2 at 2. In paragraph 9, Campbell testifies: "As part of the settlement reached with Fregoso Builders, the Plaintiff Trust Funds received an express assignment from Fregoso Builders to pursue recovery on its behalf against Hettinger for the $39,350.97 paid." Hettinger objects on the grounds that Campbell lacks personal knowledge and that it is improper testimony as to the content of a contract. *Id.* at 2. Again, Hettinger provides no reason why Campbell would not have personal knowledge of the facts to which she is testifying. This objection is **OVERRULED**.

### 3. Thomsen Declaration

Hettinger objects to two paragraphs in Anisa Thomsen's declaration. Obj. to Thomsen

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Decl., ECF No. 119-3. In paragraph 1, Thomsen testifies: "I have personal knowledge of the matters stated herein and could competently testify to them if called upon to do so at trial." Hettinger objects on the grounds that Thomsen lacks personal knowledge. Obj. to Thomsen Decl. at 2. In paragraph 9, Thomsen testifies: "My records indicate that [Hettinger] signed a document known as the [Letter of Assent]. Hettinger's signature on the Letter of Assent is dated February 3, 2011." Hettinger objects on the grounds that Thomsen lacks personal knowledge, it is improper testimony as to the content of a writing, and it is hearsay. *Id.* at 2. Again, Hettinger provides no reason why Thomsen would not have personal knowledge of the facts to which she is testifying. This objection is **OVERRULED**.

### 4. Marshall Declaration

Hettinger objects to one paragraph in Alice Marshall's declaration. Obj. to Marshall Decl., ECF No. 119-4. In paragraph 1, Marshall testifies: "I have personal knowledge of the matters stated herein and could competently testify to them if called upon to do so at trial." Hettinger objects on the grounds that Marshall lacks personal knowledge. *Id.* at 2. Again, Hettinger provides no reason why Marshall would not have personal knowledge of the facts to which she is testifying. This objection is **OVERRULED**.

## B. Unpaid Contributions

Plaintiffs seek a total of $19,232.74 in unpaid contributions. Mot. at 7-9. Hettinger fails to address this claim in his opposition.

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 515 creates a federal cause of action against employers who do not make timely contributions to employee benefit plans, and it allows plan fiduciaries to enforce obligations created under the collective bargaining agreement. *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009). To succeed on this claim, Plaintiffs must prove: (1) the Trust Funds are multi-employer plans under 29 U.S.C.

§ 1002(37); (2) Hettinger is an employer obligated to contribute under the plan's terms; and (3) Hettinger failed to contribute in accordance with the plan. *Bd. of Trs. of Laborers Health & Welfare Tr. Fund for N. California v. C & L Coatings, Inc.*, 2012 WL 7748318, at *1 (N.D. Cal. Dec. 18, 2012) (citing *Bd. of Trs. of Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Envtl. Sys.*, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004)), *report and recommendation adopted sub nom. Bd. of Trs. v. C & L Coatings, Inc.*, 2013 WL 1087849 (N.D. Cal. Mar. 13, 2013).

In this case, the Court finds Plaintiffs' undisputed evidence sufficient. First, an "employer" is defined as "any person acting directly as an employer, or indirectly in the interest on an employer, in relation to an employee benefit plan, and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). Hettinger does not dispute that he is an employer within the meaning of ERISA section 3(5) and NLRA section 2(2). *See* Stafford Decl. ¶ 3.

Second, the requirements of section 515 make clear that an employer must be bound under a collective bargaining agreement to make employee contributions to a multiemployer plan. *C & L Coatings*, 2012 WL 7748318, at *5. Under ERISA, these plans are defined as employee benefit pension plans made pursuant to a collective bargaining agreement, and to which more than one employer contributes. 29 U.S.C. §§ 1002(3), (37). Here, it is undisputed that Hettinger signed the Letter of Assent, through which he was bound to the terms of the parties' collective bargaining agreement. Thomsen Decl. ¶¶ 2, 4; McEntagart Decl. ¶ 4. The Bargaining Agreement requires the payment of fringe benefit contributions to the Plaintiff Trust Funds. Bargaining Agreement, Arts. VI-X.

Third, it is undisputed that Hettinger failed to make timely contribution payments for July and August 2015.[4] Marshall Decl. ¶¶ 8-9, 19, 21; Thomsen Decl. ¶ 15. Hettinger has also failed to raise a dispute regarding the evidence Plaintiffs submit in support of the audit of Hettinger's

---

[4] The Court also notes there can be no dispute that Hettinger failed to pay at least $3,381.20 in unpaid contributions, as that amount comes from Hettinger's self-reported Contribution Reports submitted for July and August 2015. Marshall Decl. ¶ 8-9; Thomsen Decl. ¶ 15.

payroll records covering January 1, 2015 through December 31, 2015. *See Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988) ("[O]nce the trustees produce evidence raising genuine questions about the accuracy of the employer's records and the number of hours worked by the employees, the burden shifts to the employer to come forward with evidence of the precise amount of work performed.").[5]

Accordingly, based on the undisputed evidence in the record, the Court finds Plaintiffs are entitled to judgment as a matter of law on their unpaid contributions claim.

## C. Fregoso Builders' Claim

Plaintiffs also move for summary judgment against Hettinger for the $39,350.97 Fregoso Builders paid the trust funds to clear the lien on the Sonoma State Project, arguing "Hettinger "breached the clear terms of its Sonoma State Subcontract and never subsequently resolved the condition precedent to Hettinger's right to receive payment on the Sonoma State project." Mot. at 22-23 (citing Fregoso Decl. ¶¶ 12-15; Minser Decl. ¶¶ 7-9; Campbell Decl. ¶ 9). In response, Hettinger argues Plaintiffs' SAC is brought under ERISA and contains no breach of contract claim. Opp'n at 1-2. As such, he argues "Plaintiffs may not pursue Summary Judgment on an un-alleged 'claim.'" *Id.* at 3.

### 1. Plaintiffs Allege a Breach of Contract Claim

The Court finds Plaintiffs properly allege a breach of contract claim. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). For breach of contract, Plaintiffs must allege the existence of an enforceable contract between Fregoso and Hettinger, Hettinger's breach, and damages caused by the breach. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017).

---

[5] Courts have adopted this burden-shifting approach in the ERISA context so that "[a]n employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required." *Id.*

In their First Amended Complaint, Plaintiffs allege: "Plaintiff Trust Funds eventually collected the sum of $39,350.97 From a third party general contractor, Fregoso Builders, Inc. pursuant to the attached settlement agreement. 'Exhibit A.' Pursuant to the terms this settlement agreement, Fregoso Builders has assigned their rights to collect this sum from Hettinger Electric to the Plaintiff Trust Funds." First Am. Compl. ¶ 9, ECF No. 22. "Exhibit A" refers to the settlement agreement between Plaintiffs and Fregoso, which Plaintiffs included as an attachment to the first amended complaint. ECF No. 22-1. The settlement agreement states that Fregoso contracted with Hettinger to provide electrical work for the Sonoma State Project, that Hettinger failed to pay fringe benefits for his employees who worked on the project, that Plaintiffs subsequently filed a stop notice to halt work on the project, and that Fregoso agreed to pay Plaintiffs $39,350.97 to release the stop notice. First Am. Compl., Ex. A at 1-2. Plaintiffs also request the sum collected from Fregoso as part of their prayer for relief. First Am. Compl. at 4 ("Award the Plaintiffs judgment for amounts due for the months of June 2015 – July 2015, $41,513.33, plus liquidated damages for the months of June 2015 - July 2015 in the amount of $9,480.49 according to contract; plus interest thereon at the legal rate, all pursuant to 29 U.S.C. Section 1132(g)(2)").

In their SAC, Plaintiffs incorporate these allegations and re-allege that they collected $39,350.97 from Fregoso for the July through August 2015 unpaid contributions and received an express assignment from Fregoso to pursue recovery on its behalf against Hettinger. SAC ¶ 7. In their prayer for relief, Plaintiffs request the Court "[a]ward Plaintiffs Judgement for the July 2015-August 2015 contributions which were paid by FREGOSO and which the Trust Funds are obligated to recover on their behalf as follows, all according to contract and pursuant to 29 U.S.C. Section 1132(g)(2)A-E: a. Owed Contributions = $39,350.97[.]" *Id.* at 5.

From these allegations and the terms of the settlement agreement between Plaintiffs and Fregoso, the Court can draw the reasonable inference that Hettinger is liable for the $39,350.97 Fregoso paid toward Hettinger's unpaid contributions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.");

*see also Twombly*, 550 U.S. at 444 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Further, the Court notes Hettinger did not seek to dismiss any of Plaintiffs' claims; instead, he filed an Answer in which he admitted the existence of his contract with Fregoso. *See* Answer at 3, ECF No. 82 ("Fregoso builders was the general contractor on this project. Fregoso Builders had a time and Material contract with Hettinger Electric and was not billed for the employee benefits for this Project."). Accordingly, the Court finds Plaintiffs stated a valid claim.

Hettinger also argues the Court does not have supplemental jurisdiction over Plaintiffs' breach of contract claim because "the two claims are based on different facts and law and issues." Opp'n at 3. However, given that Plaintiffs' ERISA claim is based on the amounts Hettinger failed to pay for work performed on the Sonoma State Project, and the breach of contract claim is also based on the amounts Hettinger failed to pay for work on the same project, the Court finds the breach of contract claim is properly part of this case. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) ("Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a common nucleus of operative fact between the state and federal claims.") (citation and quotations omitted).

### 2. Plaintiffs are Entitled to Summary Judgment

Turning to the merits of Plaintiffs' claim, the Court finds no genuine dispute as to any material fact. It is undisputed that Hettinger entered into the Sonoma State Subcontract with Fregoso to work as an electronic subcontractor on the Sonoma State Project. Fregoso Decl. ¶ 6; Answer at 3. Under the terms of the subcontract, Hettinger is in default of its terms in the event he "fails to make prompt payment to his workers, sub-subcontractors or suppliers, or becomes delinquent with respect to contributions or payments required to be made to any health and welfare, pension, vacation, apprenticeship or other employee benefit program or trust." Sonoma

State Subcontract, § 14.1.1.

As discussed above, Hettinger did become delinquent, and his failure to pay contributions to the Plaintiff Trust Funds was the direct cause of the stop notice and subsequent state court lawsuit. Minser Decl. ¶¶ 5, 7. The stop notice and the lawsuit triggered the default provisions of the Sonoma State Subcontract, including the provision requiring full performance of Hettinger's obligation to remove any liens or suits on the Sonoma State Project as a condition precedent to his right to receive payment for work performed. Sonoma State Subcontract, § 9 ("In case suit is brought on any claim or liens for labor performed . . ., Subcontractor shall pay and satisfy any such lien or judgment as may be established by the decision of the court in said suit. . .. Contractor is authorized to use whatever means in its discretion it may deem appropriate to cause said lien or suit to be removed or dismissed and the cost thereof, together with actual attorneys' fees, shall be immediately due and payable to Contractor by Subcontractor.").

It is also undisputed that after Hettinger failed to resolve the stop notice and lawsuit, Fregoso worked with the Plaintiff Trust Funds to come to an agreement to release the stop notice and dismiss the lawsuit. Campbell Decl. ¶9, Fregoso Decl. ¶15, Marshall Decl. ¶11. This required a payment of $39,350.97 from Fregoso to the Plaintiff Trust Funds. As such, the Court finds Hettinger breached the terms of the Sonoma State Subcontract and never resolved the condition precedent to Hettinger's right to receive payment on the Sonoma State Project. Thus, Plaintiffs have established the existence of an enforceable contract between Fregoso and Hettinger, Hettinger's breach, and damages caused by that breach.

As part of his opposition, Hettinger argues summary judgment is inappropriate because Fregoso owes money to him and "determination of how much money one party might owe the other on a construction contract can be a very complex accounting problem, and not something that can be determined and decided in a conclusory fashion in one sentence." Opp'n at 6. He further argues "Plaintiffs have not proven or alleged or offered any admissible evidence as to what Fregoso's real cost to complete Hettinger's work was, nor that the sum of that cost plus the monies already paid Hettinger exceeded Hettinger's contract price plus agreed change orders cost and work performed . . .." *Id.* However, none of these arguments are relevant to Plaintiffs' claims in

this action.  Hettinger did not plead an affirmative defense of setoff.  ECF No. 82.  The Court also notes that, while Hettinger may have separate claims against Fregoso related to their contract, Judge Chen dismissed those claims without prejudice to filing in state court.  ECF No. 118.

Accordingly, Plaintiffs are entitled to judgment as a matter of law on their breach of contract claim.

**D.  Damages**

As Plaintiffs have established Hettinger is liable for $19,232.74 in unpaid contributions, that leaves liquidated damages, interest, attorneys' fees, and costs.

### 1.  Liquidated Damages and Interest

Under ERISA, if a plan is awarded a judgment, the statute provides that it "shall" be awarded the unpaid contributions, interest on those unpaid contributions, liquidated damages, reasonable attorneys' fees, and the costs of the action.  29 U.S.C. § 1132(g)(2).  These damages are "mandatory and not discretionary" if there is a judgment in favor of the plan.  *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (holding that liquidated damages are mandatory); *Operating Eng'rs Pension Trust v. Reed*, 726 F.2d 513, 514 (9th Cir. 1984) (holding that interest and reasonable attorneys' fees are mandatory).  As the Court has awarded judgment in their favor, Plaintiffs are entitled to $12,516.74 in liquidated damages and $8,153.37 in interest, as detailed above.

### 2.  Attorneys' Fees

Plaintiffs are also entitled to attorneys' fees and costs.  As noted above, Plaintiffs seek a total of $31,984.90.  ERISA requires the Court award "reasonable attorneys' fees and costs of the action" when a plaintiff obtains a judgment in their favor or otherwise obtains the relief sought.  29 U.S.C. § 1132(g)(2)(D); *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 258 (9th Cir. 1996).  The relevant agreements also require signatories to reimburse Plaintiffs for the reasonable attorneys' fees and costs incurred in connection with the collection of their delinquent contributions.  Bargaining Agreement §§ 6.07, 8.04, 9.04; NEBF Agreement, §§ 6.8-6.9; Pension Agreement, § 5.23; H&W Agreement, ¶ 47.

Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set

forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). A reasonable fee is determined by multiplying (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar amount may also be adjusted based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

### a. Reasonableness of Hourly Billing Rate

To determine the appropriate lodestar amount, the Court must first assess the reasonableness of counsels' claimed hourly billing rate. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994). Courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits. *Id.* "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *U. Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Plaintiffs' counsel has submitted the billing records of Plaintiffs' former counsel and relevant information regarding the timekeepers who billed on this matter. Campbell Decl. ¶¶3-6; Ex. A, ECF No. 109. Campbell billed $195.00 per hour for the period from August 6, 2015 through July 21, 2017. Campbell Decl. ¶¶ 2-3. Plaintiffs' current counsel has also submitted detailed billing records and a declaration summarizing the tasks completed and indicating the hours each professional spent on this case, along with their hourly rates and their professional backgrounds. Stafford Decl. ¶ 8; Stafford Suppl. Decl., Ex. A, ECF No. 140-1. The hourly billing rate charged by Plaintiffs' current counsel in this action are: paralegals at $135, and attorneys at $230 - $235 per hour. Stafford Decl. ¶ 8. These rates are well within the range of reasonable fees in an action by an ERISA trust to collect delinquent contributions. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) ("In the absence of contrary evidence, we conclude that the requested fees of $375 and $400 per hour were established as being in line with prevailing

community rates."); *Oster v. Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (approving hourly rate of $400 for associates and $150 for paralegals); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability*, 2010 WL 1460201, at *2 (N.D. Cal. Apr. 12, 2010) (approving hourly rate of $550 for partner and $150 for paralegals); *Bd. of Trs. of Cement Masons Health & Welfare Tr. Fund for N. Cal. v. C & C Concrete Inc.*, 2013 WL 2456560 at *9 (N.D. Cal. June 6, 2013) (approving rate of $325 per hour for shareholder). Accordingly, the Court finds the hourly rates are reasonable and consistent with prevailing market rates in the Northern District.

### b. Reasonableness of Hours Billed

To assess whether the number of hours billed is reasonable, Plaintiff must submit detailed records justifying the hours that have been expended. *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986). The Court may reduce the hours through its discretion "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if hours expended are deemed excessive or otherwise unnecessary." *Id.*

Pursuant to the billing records of Campbell Law Office, Plaintiffs' former counsel billed a total of 89.92 hours from August 6, 2015 through July 21, 2017 (calculated by taking the total billable attorneys' fees of $17,534.40 and dividing by the billing rate of $195.00 per hour). Campbell Decl. ¶¶ 2, 7. Plaintiffs' current counsel billed a total of 73 hours between September 12, 2017 and August 17, 2018, incurring $14,450.50 in fees. This consists of 48.3 attorney hours and 24.7 paralegal hours. Stafford Decl., ¶¶ 8-9; Stafford Suppl. Decl., Ex. A. In their reply, Plaintiffs also seek $11,154.00 in additional attorneys' fees incurred since the fees requested in their motion. Reply at 11-12. These additional fees are for:

> completion and filing of the Motion for Summary Judgment; Preparation for and appearance at the hearing on the Motion for Summary Judgment; Communications with counsel for Defendant; Review of Defendant's opposition filings; and preparation of all pre-trial filings including the pre-trial statement, trial brief, and binders of evidence to be presented at trial (which had to be prepared and provided to the Court). Plaintiffs were required to prepare all pre-trial filings due to the fact that the pre-trial conference was previously scheduled with Judge Chen for December 18, 2018.

Stafford Suppl. Decl. ¶ 10.

After reviewing the Campbell and Stafford declarations, Plaintiffs' counsel's detailed

billing records, and considering the experience of counsel, the undersigned finds the hours billed are reasonable.

Hettinger argues Plaintiffs "have no legal right, in this action or otherwise, to recover Breach of Contract damages allegedly suffered by Fregoso," and "any fee award to Plaintiffs should be reduced by all the time and fees since October 2016 that was spent or wasted in whole or in part trying to recover the $39,000 in Breach of Contract damages allegedly suffered by Fregoso, or due to the cancellation of the 2016 settlement." Opp'n at 10. However, as discussed above, Plaintiffs properly pleaded a breach of contract claim and are entitled to judgment on that claim. As Hettinger fails to object to any specific fees incurred in relation to that claim, his argument is without merit.

Hettinger also argues the attorneys' fees claimed are not reasonable because most of the fees came after a proposed settlement between Plaintiffs and Hettinger. Opp'n at 9. Specifically, Hettinger states that in August 2016, he entered into an agreement to settle this case for $6,662.36, "but the Trustees or their counsel improperly and unadvisedly and unprofessionally allowed Fregoso to veto that settlement." *Id.* Since that time, Hettinger argues Plaintiffs' counsel has incurred additional fees "unnecessarily litigating this matter" for more than two years. *Id.* He maintains that "because Plaintiffs and their counsel wrongly, improvidently, unjustifiably and ignorantly allowed Fregoso to have veto power over a settlement that had already been signed by both parties . . ., all hours after August 2016 . . . were excessive or otherwise unnecessary, and apparently the result of bad or uninformed advice given by counsel for Plaintiffs in conditioning the settlement on Fregoso's subsequent approval or consent." *Id.* at 10 (emphasis and quotations omitted). Hettinger contends he "should not be punished for the bad advice which Plaintiffs apparently received, which unnecessarily prolonged this litigation and greatly exploded the cost of – and unnecessarily prolonged the length of – a relatively small dispute." *Id.* However, there is no evidence before the Court that the parties executed a finalized settlement agreement. Instead, it appears settlement discussions took place in August 2016, but they were conditioned on the fact that any proposed settlement would need to be approved by Fregoso before it could be finalized. Campbell Suppl. Decl. ¶ 3; Ex. A, ECF No. 137. Further, under the draft settlement agreement,

payment was to be received by September 1, 2016, yet no payment was received. *Id.* ¶ 6. Given that Fregoso paid $39,350.97 to the trust funds, Plaintiffs received an express assignment from Fregoso to pursue recovery on its behalf against Hettinger, and Hettinger has not paid any amount owed, this argument is also without merit.

### c. Lodestar Calculation

Based on this analysis, the undersigned finds Plaintiffs' counsel's rates and hours expended on this matter are reasonable. Therefore, the Court shall award Plaintiffs attorneys' fees in the amount of $43,138.90.

### 3. Costs

The Court also will award costs if "the prevailing practice in a given community [is] for lawyers to bill those costs separately from their hourly rates." *Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quotations omitted); *see* 29 U.S.C. § 1132(g)(2)(D). Here, Plaintiffs request $1,440.82, comprised of fees for filing the complaint, messenger services, completion of service and postage fees, legal research, and investigative services. Mot. at 21; Stafford Suppl. Decl. ¶ 11, Ex. B; Campbell Decl., Ex. A.

Civil Local Rule 54-3(a)(1) provides that an award of the clerk's filing fee is "allowable if paid by the claimant." The docket reflects that the filing fee was paid, and therefore Plaintiffs' request for the $400 filing fee should be granted. With respect to Plaintiffs' request for costs for messenger service, legal research, and investigation, such costs are available on the basis that they are generally billed as attorneys' fees. *See Redland Ins. Co.*, 460 F.3d at 1257 (holding that expenses that are not allowable as costs under 28 U.S.C. § 1920 may be awarded under ERISA as a component of reasonable attorneys' fees where it is "the prevailing practice in a given community" for lawyers to bill those costs separately from their hourly rates); *see also Trs. of the Constr. Indus. & Laborers Health & Welfare Tr.*, 460 F.3d 1253, 1256-59 (9th Cir. 2006) (approving of awards for computerized research, courier services, facsimile charges, and photocopies); *Carpenters Pension Tr. Fund for N. Cal. v. Lindquist*, 2011 WL 4543079, *2 (N.D. Cal. Sep. 29, 2011) (awarding delivery costs as part of reasonable attorneys' fees where plaintiffs submitted billing records documenting those costs); *Auto. Indus. Pension Tr. Fund v. Lew*

*Williams, Inc.*, 2011 WL 4853606, at *3 (N.D. Cal. Aug. 30, 2011) *report and recommendation adopted*, 2011 WL 4853600 (N.D. Cal. Oct. 13, 2011) (awarding $4,000 in investigative costs where amount of time expended, billing rates, and costs were found reasonable given work performed); *Pension Plan for Pension Tr. Fund for Operating Eng'rs v. J & K Sweeping*, 2014 WL 4626008, at *8 (N.D. Cal. Sep. 15, 2014) (awarding $1,554.41 in costs for filing fees, messenger services, service of the complaint, and investigative costs).  Further, the Court finds the requested costs are reasonable and have been adequately documented.  Therefore, the Court shall award Plaintiffs' costs in full.

## V.    CONCLUSION

Based on the analysis above, the Court **GRANTS** Plaintiffs' motion for summary judgment in full.  The Court awards $123,833.54 in damages as follows: $39,350.97 for breach of contract; $19,232.74 in unpaid contributions; $12,516.74 in liquidated damages; $8,153.37 in interest; attorneys' fees in the amount of $43,138.90; and $1,440.82 in costs.

The Court shall enter a separate judgment.

**IT IS SO ORDERED.**

Dated: January 17, 2019

THOMAS S. HIXSON
United States Magistrate Judge