UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK BUCKHORN, et al., | Case No. 15-cv-04352-TSH |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO ENFORCE SETTLEMENT** |
| MARLON EUGENE HETTINGER, | Re: Dkt. No. 218 |
| Defendant. | |

## I. INTRODUCTION

After successful settlement negotiations with Magistrate Judge Alex Tse, the parties reached a settlement on February 9, 2021. However, Plaintiffs have now filed a motion to enforce the settlement and for sanctions. ECF No. 153. Defendant Marlon Eugene Hettinger opposes the motion, arguing the parties never agreed upon a written settlement agreement. ECF No. 228. The Court finds this matter suitable for disposition without oral argument and **VACATES** the September 2, 2021 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court finds that a settlement agreement was reached and therefore **GRANTS** Plaintiffs' motion to enforce the settlement and **DENIES** the sanctions request for the following reasons.[1]

## II. BACKGROUND

**A.  Parties**

Plaintiffs Redwood Empire Electrical Workers Health and Welfare Trust Fund, Redwood Empire Electrical Workers Pension Trust, Joint Electrical Industry Training Program, National Employees Benefit Fund, Redwood Empire Electrical Workers Work Recovery Fund, and

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 29, 127, 176.

1  Redwood Empire Vacation Fund are employee benefit plans as defined ERISA § 3(3), 29 U.S.C. §

2  1002(3), and are multi-employer plans as defined by ERISA §3(37)(A), 29 U.S.C. § 1002(37)(A).

3  Third Am. Compl. ¶ 1, ECF No. 181. The Boards of Trustees of each named employee benefit

4  plan are fiduciaries under ERISA §402(a), 29 U.S.C. § 1002(a). *Id.* Plaintiff Anisa M. Thomsen

5  is a Trustees of the Plaintiff ERISA Trust Funds with authority to act on behalf of all Trustees. *Id.*

6  Plaintiff Jack Buckhorn is no longer a Trustee of the Plaintiff ERISA Trust Funds; therefore, John

7  P. McEntagart is acting on his behalf as Trustee of the Plaintiff ERISA Trust Funds. *Id.* As

8  Trustee of the Redwood Empire Electrical Workers Health and Welfare Trust Fund, Thomsen is

9  authorized to bring suit and collect monies for all Plaintiff ERISA Trust Funds. *Id.*

10  Defendant Hettinger, individually and doing business as Hettinger Electric, is an employer

11  within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and section 2(2) of the

12  National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(2). *Id.* ¶ 2.

13  Plaintiff Fregoso Builders, Inc. is a general contractor who entered into a written contract

14  with Hettinger for him to work as an electrical subcontractor of Fregoso. *Id.* ¶ 3.

**B.   Relevant Agreements**

**1.   Bargaining Agreements**

17  On February 3, 2011, Hettinger signed a document known as the Letter of Assent, through

18  which Hettinger authorized the Redwood Empire Chapter of the National Electrical Contractors

19  Association ("NECA") to be its collective bargaining representative. *Id.* ¶ 12. The Letter of

20  Assent binds Hettinger to all the provisions of the ongoing Inside Labor Agreements between

21  I.B.E.W. Local 551 and the Redwood Empire Chapter of NECA, effective as of February 3, 2011.

22  *Id.* ¶ 13. The letter provides that it shall remain in effect until Hettinger terminates it by giving

23  written notice to Local 551 at least 150 days prior to the then-current anniversary date of the

24  applicable labor agreement. *Id.*

25  By virtue of the Letter of Assent, Hettinger was bound to the terms of a collective

26  bargaining agreement known as the Inside Agreement between Local Union 551 International

27  Brotherhood of Electrical Workers and Redwood Empire Chapter NECA. *Id.* ¶ 14. The

28  agreement, which was effective from June 1, 2015 through May 31, 2017, requires the payment of

fringe benefit contributions to the Plaintiff Trust Funds. *Id.* It also requires fringe benefit contributions to the National Electrical Benefit Fund, Labor Management Fund, and the National Electrical Industry Fund. *Id.*

Pursuant to the Bargaining Agreement, fringe benefit contributions are due 15 calendar days following the month in which the hours were worked. *Id.*, Art. VI. It requires an employer to pay liquidated damages and interest on delinquent contributions. *Id.* ¶ 15. It also requires that an employer who fails to make the required contributions to the Plaintiff Trust Funds also pay all costs of collection, including attorneys' fees. *Id.*

Pursuant to the Trust Agreements for the Plaintiff ERISA Trust Funds, the Trustees of the Trust Funds may require an employer to submit its records to an accountant selected by the Board of Trustees for audit and must pay all amounts found due pursuant to the audit. *Id.* ¶ 16. The Board of Trustees may also file a lawsuit against a delinquent employer and may recover the principal delinquent amount due, attorneys' fees and costs, applicable audit costs, and 10% per annum interest on any delinquent contributions, as well as 20% liquidated damages. *Id.* ¶ 17. The Board is also authorized to formulate and implement rules and regulations to facilitate the proper functioning of the Plaintiff Trust Funds, through which they have adopted Collection Procedures detailing the procedures for collecting employer contributions. *Id.* ¶ 18.

**2.     Agreements Between Fregoso and Hettinger**

In response to an advertisement soliciting bids, Fregoso elected to bid on a public work of improvement known as the Cabernet Village Student Housing Project, located on the campus of California State University Sonoma (the "Sonoma State Project"). *Id.* ¶ 19. Fregoso solicited bids from trade subcontractors, including the electrical scope of work. *Id.*

In June 2015, Hettinger entered into a written subcontract with Fregoso to work as an electrical subcontractor for Fregoso on the Sonoma State Project. *Id.* ¶ 20 & Ex. 1 (Sonoma State subcontract). The contract provides that Hettinger will be in default of its terms in the event that he becomes delinquent with respect to contributions or payments required to be made to any health and welfare, pension, vacation, apprenticeship or other employee benefit program or trust. *Id.* The subcontract also provides that in the event that Hettinger is terminated, it shall be entitled

3

1   to no further payment until the balance of the work has been completed. *Id.*

2   The Sonoma State subcontract further provides that Fregoso is authorized to use whatever
3   means in its discretion it may deem appropriate to cause any liens or suits on the project to be
4   removed and that Hettinger shall be responsible for all attorneys' fees and costs required to
5   remove said lien. *Id.* ¶ 21. It additionally provides that the full performance of Hettinger's
6   obligation to remove any liens or suits on the Sonoma State Project, including the payment of any
7   amounts due from Hettinger to Fregoso, is a condition precedent to Hettinger's right to receive
8   payment for work performed. *Id.* ¶ 22.

### C. Amounts Owed to Fregoso

In October 2015, Fregoso was served with a lien on the Sonoma State project in the form of an Amended Public Works Stop Notice. *Id.* ¶ 27. The notice, issued by the Plaintiff Trust Funds, stated that unpaid fringe benefit contributions were due for work performed on the Sonoma State project. *Id.* On December 21, 2015, counsel for the Plaintiff Trust Funds filed suit on the stop notice in Sonoma County Superior Court, Case No. SCV-258178. *Id.* ¶ 28. The lawsuit named Fregoso Builders, Sonoma State University, and the Board of Trustees of the California State University as defendants and demanded amounts due pursuant to the stop notice. *Id.*

In response, Fregoso paid $39,350.97 to the Plaintiff Trust Funds pursuant to a settlement agreement. *Id.* ¶ 29. As part of the agreement, the Plaintiff Trust Funds dismissed the lawsuit, released the stop notice, and received an express assignment from Fregoso to pursue recovery on its behalf against Hettinger. *Id.* ¶ 29 & Ex. 2 (Assignment). In turn, Fregoso was required to terminate and replace Hettinger on the Sonoma State project. *Id.* ¶ 30. Fregoso alleges that no amounts are owed to Hettinger because the costs to complete the project and pay the Plaintiff Trust Funds to release the stop notice and dismiss the lawsuit exceeded the Sonoma State subcontract price. *Id.* Plaintiffs allege Hettinger is liable to Fregoso for the amount paid by Fregoso to the Plaintiff Trust Funds to clear the lien and lawsuit in the amount of $39,350.97. *Id.* ¶ 31.

### D. Settlement Proceedings

On February 9, 2021, the parties attended a settlement conference before Magistrate Judge

4

1   Alex G. Tse, at which time a settlement was reached and placed on the record.  ECF No. 206.

2   Judge Tse stated the agreement on the record as follows:

> All right. The terms that are agreed to today are as follows. That the defendant, Hettinger, shall pay a total of $86,000 in the following manner: that there will be a $20,000 down payment due and payable when there is a written settlement agreement signed and executed. Thereafter, the balance of $66,000 shall be paid over a period of equal installments of 66 months. There is a 10% interest due, 10% per regulation that's due in connection with the payments that are payment over time. There is also a requirement for a stipulated judgment. That shall be a sum of approximately $163,000 and that will be subject to whatever the final accounting was of the value of the claim that accrued as of today. So that stipulated judgment is the sum that reflects should there be a default, that will be the judgment value entered. And obviously, Mr. Hettinger gets credit for any payments that he has made prior to the default. There is also going to be a mutual release under the California Code of Civil Procedure, 1346 that the clients will have to also agree to and sign what they understand is a mutual and general release. The plan is for the parties to circulate an agreement in about two weeks and hopefully that the signed agreement will be circulated in a total of four weeks. So that's, that's the goal. All right.

Minser Reply Decl., Ex. A, ECF No. 232-1.[2]  The settlement placed on the record goes on to state:

> JUDGE TSE: So, have I accurately summarized the material terms of the agreement reached in principle today that will be reduced to a written agreement forthcoming?
>
> PLAINTIFFS' COUNSEL: Yes, Your Honor.
>
> JUDGE TSE: Okay.
>
> PLAINTIFFS' COUNSEL: Yes, Your Honor.
>
> JUDGE TSE: Very good. And will there be a client representative that also agrees?
>
> CLIENT REPRESENTATIVE: Yes, Your Honor.
>
> JUDGE TSE: And Mr. Fregoso?
>
> MAX FREGOSO: Agree, yes.
>
> JUDGE TSE: Okay. All right. And for the Defendants? Counsel, agree to the material terms of the settlement?
>
> DEFENDANT'S COUNSEL: This is what we discussed.

---

[2] In his opposition, Hettinger agreed that the Court could review the February 9 transcript.

>JUDGE TSE: Okay. So, do you agree?
>
>DEFENDANT'S COUNSEL: I'm not the client-- so.
>
>JUDGE TSE: No, but do you agree as to the terms?
>
>DEFENDANT'S COUNSEL: I agree that's what we discussed in a private session.
>
>JUDGE TSE: Okay. I don't know why this is so hard. It's either yes or no. Do you agree to the material terms of the settlement?
>
>DEFENDANT'S COUNSEL: I'm not agreeing to the agreement. I'm just agreeing—
>
>JUDGE TSE: [Interposing] Then we don't have a settlement. Do you agree, do you agree to the material terms as were proposed that will be reduced into writing? Yes or no.
>
>DEFENDANT'S COUNSEL: I agree that these are the terms that we discussed, and we plan to do them in writing. That's what I agree to.
>
>JUDGE TSE: All right. Mr. Hettinger, do you agree to the terms of the settlement, the material terms of the settlement?
>
>MARLON HETTINGER: Yes, I do.

*Id.*

The Plaintiff Trust Funds' counsel drafted the settlement documents in accordance with the terms placed on the record, after which the settlement documents were sent to Plaintiff Fregoso's counsel for review. Minser Decl. ¶ 3, ECF No. 219. Fregoso's counsel made minor changes which were approved by the Plaintiff Trust Funds' counsel. *Id.* The settlement documents were then sent via email to Hettinger's counsel on March 24. *Id.* ¶ 4. Having received no response, Plaintiffs' counsel called Hettinger's counsel on April 5 and followed up with an e-mail. *Id.* ¶ 6. That day, Hettinger's counsel responded via e-mail and stated that he had been out of the office and would try to review and get back to Plaintiffs later that week. *Id.*

On April 26, Hettinger's counsel objected to a provision of the settlement documents. *Id.* ¶ 7. The next day, Plaintiffs' counsel contacted Judge Tse and requested that either the record be played back for all counsel to hear or that Judge Tse confirm the terms placed on the record. *Id.* ¶ 8. On April 27, Judge Tse provided the recordings of the terms placed on the record, and Plaintiffs' counsel provided the recording to Hettinger's counsel. *Id.* ¶ 9. On April 30, Hettinger's counsel responded, agreeing that the disputed term was placed on the record, but

contending that it was unenforceable and adding a new dispute regarding how Hettinger would remit settlement payments. *Id.* ¶ 10. Counsel for both sides met with Judge Tse on May 13, during which it appeared the parties resolved Hettinger's objection regarding the logistics of how payments would be remitted. *Id.* ¶ 11. Plaintiffs' counsel then provided revised settlement documents to Hettinger's counsel for review. *Id.*

On June 9, Hettinger's counsel approved the revised settlement documents, sending an e-mail stating "The agreement looks OK and I will recommend that our client sign it." *Id.* ¶ 12. Plaintiffs followed up with Hettinger's counsel on June 23, who responded stating "I sent it to the Client for Signature but have not heard back from him yet." *Id.* ¶ 13. Plaintiffs followed up again on July 7, at which time Hettinger's counsel responded stating "No change in status here. Have not heard back from the client recently on this." *Id.* ¶ 14. Plaintiffs followed up again on July 14, and Hettinger's counsel responded stating "The client says he has suffered some financial setbacks and may not be able to pay the initial deposit. He may be consulting new counsel." *Id.* ¶ 15.

Plaintiffs filed the present motion on July 15, requesting the Court enforce the parties' settlement agreement placed on the record on February 10. The next day, Judge Tse ordered all parties to attend a follow up settlement conference on July 22. ECF No. 221. After Hettinger failed to appear, Judge Tse ordered him to show cause by July 26, explaining why he failed to appear at the conference. ECF No. 225. Hettinger responded that his attorney told him about the follow up settlement conference, but he was afraid that if he attended he would be "pressured into committing to a date by which my first $20,000 payment under the settlement agreement would have to be made, even though I knew I might not be able to come up with $20,000 on that date." ECF No. 227.

In violation of Civil Local Rule 7-3(a), Hettinger filed an opposition 21 days after Plaintiffs' motion. In his opposition, Hettinger makes two arguments: (1) "A review of -the February 9] Transcript will reveal that the Statement of the settlement on the record does not state the dates, deadlines or time periods for the making of payments under that settlement"; and (2) "Plaintiffs' request for unspecified sanctions states no legal basis for such sanctions, or foundation for such and is not meritorious." The Court permitted the late filing and directed Plaintiffs to file

7

any reply by August 19.  The matter is now fully briefed.

### III.   LEGAL STANDARD

A district court retains the inherent power to summarily enforce settlement agreements entered into by the parties in cases pending before it.  *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).  This inherent authority applies to settlement agreements entered on the record but later reneged on by one party.  *Henderson v. Yard House Glendale, LLC*, 456 F. App'x 701, 702 (9th Cir. 2011) ("The district court did not abuse its discretion in enforcing the settlement agreement after [Plaintiff] entered into it on the record in open court, but later refused to execute a formal agreement to dismiss the action . . . .").  The party seeking enforcement bears the burden of demonstrating that the parties entered into an enforceable agreement.  *In re Andreyev*, 313 B.R. 302, 305 (B.A.P. 9th Cir. 2004); *Lee v. Retail Store Employee Bldg. Corp.*, 2018 WL 385207, at *4 (N.D. Cal. Jan. 10, 2018), *appeal dismissed*, 2018 WL 3825472 (9th Cir. July 20, 2018).

"Assessing the validity of a settlement agreement . . . is a question of state contract law." *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1087 (9th Cir. 2015) (citing *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) ("Typically, the construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." (quotation marks omitted)).  Under California law, a valid contract requires parties capable of contracting, consent, a lawful object, and consideration.  Cal. Civ. Code § 1550; *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (2004). "[U]nless a writing is required by the statute of frauds, oral settlement agreements are enforceable in the same manner as oral agreements in general."  *Nicholson v. Barab*, 233 Cal. App. 3d 1671, 1681 (1991); *see id.* at 1682 (listing California cases in which out-of-court oral settlement agreements were found to be enforceable).  Here, California's statute of frauds, California Civil Code section 1624, is not applicable because the agreement is not one of the seven types of contracts listed in section 1624 as "invalid" without a writing.

### IV.   DISCUSSION

Based on the parties' submissions, the Court finds the parties entered into an enforceable settlement agreement on February 9, 2021.

8

### A. Parties Capable of Contracting

First, pursuant to California Civil Code section 1556, all persons are capable of contracting "except minors, persons of unsound mind, and persons deprived of civil rights." None of these exceptions applies here.

### B. Mutual Assent

"Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (2015) (citations and internal quotations omitted). Applying this objective standard, the Court finds the parties mutually manifested assent to settle this case on the terms put on the record.

Hettinger argues there was no binding agreement because the February 9 transcript does not state the dates, deadlines or time periods for the making of payments. However, a review of the settlement shows the parties agreed to all the terms Hettinger claims are lacking:

(1) Settlement was reached in the amount of $86,000;

(2) The initial down payment of $20,000 was to be due upon the signing of the written agreement;

(3) The written agreement was to be signed in four weeks;

(4) Thereafter, following the down payment, Hettinger shall pay $66,000 over a period of equal installments of 66 months thereafter, plus interest at 10%;

(5) Hettinger would also sign a stipulated judgment for approximately $163,000, which could be entered by the Plaintiffs upon default, less a credit for any amounts paid.

Minser Reply Decl., Ex. A. Hettinger "may no longer like the terms of the settlement, but he agreed to those terms . . . and [Plaintiffs] have the right to enforce them." *McCovey v. Pac. Lumber Co.*, 1992 WL 228888, *4 (N.D. Cal. May 29, 1992); *see also Galinis v. Bayer Corp.*, 2020 WL 1865286, at *3 (N.D. Cal. Apr. 14, 2020) ("In this regard, it should also be noted that an oral settlement agreement is binding on the parties when it is memorialized on the record in court, even if one party has a change of heart after agreeing to its terms but before the terms are reduced

1   to writing.") (citing *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002)); *Ebates*

2   *Performance Mktg. Inc. v. Integral Techs. Inc.*, 2013 WL 4427115, at *2 (N.D. Cal. Aug. 15,

3   2013) ("Because the agreement was reached before Judge Spero, recited on the record, and orally

4   executed in court by counsel for both parties as well as the parties themselves, no factual inquiry

5   into the formation of the agreement, its material terms, or the extent to which the parties intended

6   to be bound is necessary at this time.") (citing *Doi*, 276 F.3d at 1138; *Phillips v. Pilgrim Creek*

7   *Ests. Homeowners Ass'n*, 2020 WL 995862, at *7 (S.D. Cal. Mar. 2, 2020), *report and*

8   *recommendation adopted*, 2020 WL 5757965 (S.D. Cal. Sept. 28, 2020), *appeal dismissed*, 2021

9   WL 1713070 (9th Cir. Feb. 4, 2021) (enforcing settlement agreement where material terms were

10  placed on the record before the court).

11  Thus, because the parties clearly expressed their mutual assent before Judge Tse and on the

12  record, there is no doubt they each expressly manifested their assent to settle this case and that the

13  above terms were the essential and material terms to which both parties assented.

14  **C.   Lawful Object**

15  The object of the settlement is lawful as it requires Hettinger to make a settlement payment

16  and agree to various non-monetary terms in exchange for Plaintiffs' release of their claims against

17  him. *See Madani v. Cty. of Santa Clara*, 2019 WL 402362, at *7 (N.D. Cal. Jan. 31, 2019)

18  (settlement payment in exchange for release of claims is a lawful object of settlement agreement);

19  *Phillips*, 2020 WL 995862, at *7 (same).

20  **D.   Consideration**

21  Finally, the settlement is supported by consideration. Consideration is satisfied when a

22  party (1) confers or agrees to confer a benefit on a party not entitled to that benefit, or (2) suffers

23  or agrees to suffer a prejudice that a party is not legally bound to suffer. Cal. Civ. Code § 1605;

24  *see* 1 Witkin, Summary 11th Contracts § 202 (2021) ("Consideration may be an act, forbearance,

25  change in legal relations, or a promise."). Here, the settlement requires Hettinger to pay Plaintiffs

26  a settlement payment, in exchange for which they will dismiss the case. Therefore, the settlement

27  is supported by consideration. *Madani*, 2019 WL 402362, at *7-8 (settlement supported by

28  consideration where it required settlement payment in exchange for dismissal of lawsuit); *Phillips*,

2020 WL 995862, at *7 (same).

**E.     The Settlement Agreement is Complete; An Evidentiary Hearing is Not Required**

The Ninth Circuit has cautioned that district courts "may enforce only complete settlement agreements." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). "A complete agreement is "one where the parties have manifested their mutual assent to all the material terms." *Lee*, 2018 WL 385207, at *4 (citation and quotations omitted). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890 (citations omitted). However, there is no need for an evidentiary hearing where the parties have made an oral settlement on the record in open court, in which case the court may require the parties to comply with their representations without holding a hearing. *Doi*, 276 F.3d at 1138.

Here, the terms of the settlement placed on the record in open court and the parties' assent to those terms cannot be any clearer. *See id.* at 1139 ("[T]here was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court."). Unlike other cases where settlement is reached out of court and a dispute exists over what exactly the parties agreed to, there can be no such dispute here. The Ninth Circuit's opinion in *Doi* is directly on point:

> In the typical case when one party seeks to enforce a settlement agreement against another, parties exchange phone calls and e-mails, and perhaps even drafts of a settlement agreement, outside of court. At some point in the process, one party concludes that a final agreement has been reached; the other party, however, disagrees. We can understand how a party could dispute having made a binding agreement in such a case.
>
> This, however, is not the typical case. Rather, here, the plaintiff made a binding settlement agreement in open court: when read the terms of the agreement, and asked if she agreed with them, Doi simply responded, "yeah." At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation.
>
> Thus, we cannot say that the district court abused its discretion by finding that Doi's response in open court, after the terms of the

        settlement agreement were recited, constituted a binding agreement to settle.

*Id.* at 1141. When both the terms of the settlement and the parties' mutual assent thereto is clear, an evidentiary hearing is not required. *Id.* at 1139 ("[T]here was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court."). Accordingly, there is no need to hold an evidentiary hearing.

**F.**    **Sanctions**

Plaintiffs request the Court order sanctions against Hettinger for all reasonable fees incurred by Plaintiffs' counsel after June 9, 2021. However, under Civil Local Rule 7-8(a), any motion for sanctions must be separately filed. As Plaintiffs did not file their request for sanctions as a separate motion, the Court denies the request without prejudice.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion to enforce the parties' settlement agreement and **DENIES** their request for sanctions. The Court shall enter a separate judgment, after which the Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

Dated: August 30, 2021

THOMAS S. HIXSON
United States Magistrate Judge